UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| JOHN BARTIS, | ) |  |
|---|---|---|
|  | ) |  |
| Plaintiffs | ) |  |
|  | ) |  |
| vs. | ) | Case No. 4:13-cv-00657-JAR |
|  | ) |  |
| BIOMET, INC., et al., | ) |  |
|  | ) |  |
| Defendants. | ) |  |
|  | ) |  |

# MEMORANDUM AND ORDER

This matter is before the Court on Plaintiff John Bartis's Motion to Consolidate this case with *Hollins v. Biomet*, No. 4:18-cv-02093-JAR, and *Gowins v. Biomet*, No. 4:18-cv-02094-RLW. (Doc. 28.) The motion has been fully briefed and a hearing before the undersigned was held on January 13, 2020, at which both sides presented oral argument on the record. (*See* Docs. 50, 51.)

**Background**

All three cases stem from hip replacement surgeries implanting a M2a-Magnum metal-on-metal ("MoM") artificial hip, manufactured or marketed by Defendants Biomet, Inc.; Biomet Orthopedics, LLC; Biomet U.S. Reconstruction, LLC; and Biomet Manufacturing Corp. (collectively, "Biomet"). The Magnum is a three-piece device: a surgeon attaches the "acetabular cup" to the hip bone, removes the top of the femur, installs a taper insert and new, artificial femoral head, and then seats the femoral head into the acetabular cup. In a MoM model, both the cup and the head are made of metal. All three patients experienced significant

pain and required subsequent surgery to revise the implantation. In all three cases, the acetabular cup in the MoM is alleged to have been a primary contributor to the negative outcome.

John Bartis[1] was forty-nine years old when he had his left hip replaced. He began experiencing extreme pain almost immediately after the operation, later determined to have been caused by a periprosthetic fracture in his femur—small breaks were caused around the implant. Bartis underwent a second surgery a week after the first to revise the implantation and suffered severe post-operative conditions, including acute kidney failure. He ultimately underwent a third surgery to have the Magnum replaced with an artificial joint made by a different manufacturer.

Guan Hollins[2] was forty-two when a surgeon replaced his left hip with a Magnum device. More than seven years later, worsening pain led to a revision in which the Magnum MoM was replaced with a metal-on-polyethylene ("MoP") model, in which the acetabular cup is separated from the femoral head by a polyethylene liner. The revision resolved Hollins' hip issue.

Judith Gowens[3] was sixty-eight when she had a Magnum device implanted in her right hip joint. The device performed without complication for more than six years before worsening pain in her hip brought her back for evaluation. In the interim, she underwent a number of significant orthopedic surgeries and was diagnosed with severe central spinal canal stenosis, which doctors suspect might have contributed to her hip pain. Radiography identified a piece of surgical drill bit that had broken off and been left inside Gowens's body during the hip replacement. She underwent a revision at the age of seventy-five and the Magnum MoM was replaced with an MoP model.

Believing that their negative outcomes were due in whole or in part to defects in the design of the M2a-Magnum MoM device, Plaintiffs filed suit against Biomet. Along with

---

[1] *Bartis v. Biomet*, No. 4:13-cv-00657-JAR
[2] *Hollins v. Biomet*, No. 4:18-cv-02093-JAR
[3] *Gowens v. Biomet*, No. 4:18-cv-02094-RLW

hundreds of others, Plaintiffs' cases were transferred and joined into *In re Biomet M2a Magnum Hip Implant Prods. Litig.*, MDL-2391. A significant number of those cases settled and the remaining cases, including Plaintiffs', were remanded to the transferring courts for independent consideration. Plaintiffs now seek to consolidate their cases, arguing that they are so legally and factually similar that a consolidated trial would be more efficient and cost effective.

Plaintiffs all allege claims of strict products liability, including failure to warn, as well as claims of negligence, breach of warranty, negligent misrepresentation, fraudulent misrepresentation, and fraudulent concealment. All seek compensatory and punitive damages. Gowens and Hollins's spouses are also named plaintiffs in their respective cases and advance claims for loss of consortium.

Defendants oppose consolidation, arguing that the patients' medical histories and surgical experiences are so dissimilar that the individual fact issues would predominate over their similar legal claims. In addition, Defendants argue that separate trials would be faster and cheaper and would avoid prejudicial "overflow evidence" that leads the jury to find liability for a plaintiff based on evidence adduced in another plaintiff's case.

**Legal Standard**

"The Court has broad discretion to order consolidation." *A.O.A.*, 2016 WL 1182631, at *2 (citing *Enterprise Bank v. Saettele*, 21 F.3d 233, 235 (8th Cir. 1994)). Under Federal Rule of Civil Procedure 42, "actions before the court [that] involve a common question of law or fact" may be: "join[e]d for hearing or trial"; "consolidate[d]"; or otherwise managed "to avoid unnecessary cost or delay." Because the primary benefit of consolidation is judicial economy, "[c]onsolidation is inappropriate . . . if it leads to inefficiency, inconvenience, or unfair prejudice to a party." *E.E.O.C. v. HBE Corp.*, 135 F.3d 543, 551 (8th Cir. 1998). Moreover, "for convenience, to avoid prejudice, or to expedite and economize, the court may [consolidate cases

but] order a separate trial of one or more separate issues, claims, crossclaims, counterclaims, or third-party claims." *Id*.

The threshold consolidation inquiry is "whether the proceedings involve a common party and common issues of fact or law." *A.O.A. v. Doe Run Res. Corp.*, No. 4:11 CV 44 CDP, 2016 WL 1182631, at *2 (citing *HBE Corp.*, 135 F.3d at 551). That said, "[t]he mere existence of common issues . . . does not mandate that the cases be joined." *Id.* (citing *Northstar Marine, Inc. v. Huffman*, Nos. 13-0037-WS-C, 14-0205-KD-M, 2014 WL 4167019, at *2 (S.D. Ala. Aug. 21, 2014)). The "critical question for the district court," therefore, is "whether the specific risks of prejudice and possible confusion" are greater than "the risk of inconsistent adjudications of common factual and legal issues, the burden on parties, witnesses and available judicial resources posed by multiple lawsuits, the length of time required to conclude multiple suits as against a single one, and the relative expense to all concerned of the single-trial, multiple-trial alternatives." *Arnold v. E. Air Lines, Inc.*, 681 F.2d 186, 193 (4th Cir. 1982), *on reh'g,* 712 F.2d 899 (4th Cir. 1983) (citing Fed. R. Civ. P. 42; 9 C. Wright & A. Miller, Federal Practice & Procedure: Civil s 2383 (1971)).

## Discussion

As noted, Plaintiffs' legal claims are largely aligned. In addition, there are significant factual similarities across all three cases; the patients all received a M2a-Magnum MoM artificial hip,[4] within a fourteen-month period, had complications related to the acetabular cup, and required surgical revisions. Likewise, because the implantations occurred in close temporal proximity, the applicable instructions for use, marketing literature, and general medical

---

[4] Gowens's M2a-Magnum used a "Tri-Spike" acetabular cup, which included sharp metal points designed to improve the security of the cup's attachment to the hip bone.

understanding of the risks and benefits associated with the device would also have been largely the same.

That said, the patients are dissimilar in relevant ways, most notably in their individual pre- and post-surgical medical histories. As noted, the onset and nature of complications related to each patient's hip implant differs; one suffered a small fracture around the implant during the surgery, one allegedly experienced pain when the acetabular cup was catching soft tissue long after the implantation, and the third went years before having issues with the cup's connection to the hip bone. In addition, each patient's revision surgery featured unique circumstances; one was given a new implant from another manufacturer, one was given a MoP model from Biomet, and the third had to have a piece of drill bit removed before the implant could be addressed.

Still, on balance, the Court believes that the cases are more alike than they are different and that the differences can be adequately addressed at trial by Defendants. Moreover, all three patients' medical histories involve an alleged failure of the same device, meaning there is significant efficiency to be gained by explaining the medical science and engineering of that device one time to a single jury.

In addition, the Court notes that Defendants' knowledge of the inherent medical risks of the Magnum device is a central issue in all three cases, increasing the risk of inconsistent adjudications; one jury could find that Defendants' knowledge was sufficient to prove liability while a second jury, considering essentially identical facts, could find that Defendants did not know enough to be held liable. To that end, evidence regarding what Defendants knew and when they knew it would need to be presented only once in a consolidated trial. The same can be said for expert testimony regarding the design and use of the M2a-Magnum; there is no way around presenting each patient's medical history—including testimony from their treating physicians—but the facts surrounding the device's design and the Defendants' knowledge are

identical and expert testimony on those matters could be presented only once. As such, the Court believes a consolidated trial would be cheaper and faster than three individual trials.

Lastly, the Court is not persuaded by Defendants' claims about the risk of spillover evidence. As Plaintiffs note, juries are often instructed on what evidence they can and cannot consider for a given legal claim and are presumed to follow those directions. *Weeks v. Angelone*, 528 U.S. 225, 234 (2000) (citing *Richardson v. Marsh*, 481 U.S. 200, 211, 107 S.Ct. 1702, 95 L. Ed. 2d 176 (1987)). Likewise, the Court believes that the jury can follow the Court's instructions regarding its consideration of punitive damages. As such, the Court concludes that the effect of spillover evidence can be successfully managed such that any prejudice is outweighed by the significant economy of a consolidated trial. Finally, while recognizing the benefits of consolidation, the Court recognizes that it can always reconsider this order and determine at a later date that severance is required.

## Conclusion

For the foregoing reasons and those stated on the record,

**IT IS HEREBY ORDERED** that Plaintiff's Motion to Consolidate (Doc. 28), is **GRANTED.** The parties are directed to submit filings in the above-captioned case.

**IT IS FURTHER ORDERED** that the Clerk is directed to close *Hollins v. Biomet*, No. 4:18-cv-02093-JAR, and *Gowins v. Biomet*, No. 4:18-cv-02094-RLW.

Dated this 24th day of January, 2020.

_____
JOHN A. ROSS
UNITED STATES DISTRICT JUDGE